Good morning. This is a relatively simple case of a man who was originally sentenced to a lower six-year term. It was doubled because of an alleged prior serious felony conviction under the California Three Strikes Law, and to which five years were added for that conviction for a total of 18 years, four months. That sentence was reversed on appeal because of the insufficiency of the evidence that the prior conviction was, indeed, of a serious felony. On remand, the charge of that prior conviction was reversed. So you would think that there would be a big difference between having and not having a prior strike, which contributed 11 years to the first sentence. But on remand, the court imposed 16 years, almost the same as the original 18-year, four-month sentence. It did that by finding that what it originally found to be a mitigated violation of Penal Code Section 288.5, warranting a six-year sentence, now to be an aggravated violation, warranting a 16-year sentence. It said that what warranted that was that even a middle 12-year term doubled would have been too long, but now a 16-year term, not doubled, would not be too long. Of course, that ignored the fact that what authorized that doubling was the prior serious felony charge, which the evidence had been found insufficient and which had been dismissed. Mr. Gonzalez has now served almost 10 years of that 16-year term. We have an argument that the evidence of the 288.5 violation was insufficient. I don't have anything more to add to that argument. But I do want to stress this point, and that is that even if the evidence were sufficient, it shows that what the judge found at the original sentencing hearing to be true, that this case was a dramatically less serious violation of Section 288 than is usually seen. And it also casts doubt on any idea that the defendant is what could be called a, quote, unquote, fixated pedophile, although it shows that he did have some emotional problems. Now, these two things have significant implications for the issues that I do want to talk about, which are the denial of proper consideration of the defendant's choice of counsel and his right to the effective assistance of counsel. But just going to the issue you've already addressed, again, we're on habeas review here, and therefore I'm trying to find the Supreme Court precedent which would not allow the judge, based on the factors he had in front of him, to give the sentence that he should give, that he gave. It seems to me that Woodford v. Visciati of 537 U.S. certainly allows it. I looked all over in any kind of Supreme Court precedent to suggest that the what the judge did here was not according to due process, as you've alleged, and couldn't find the case. And I'm on habeas review. So how do I get to the point you want to get as to that particular sentence? Well, we're not raising any direct contention on this appeal, that the sentence was erroneous. We're arguing that it was ineffective assistance of counsel not to object to erroneous reasons. I understand your objection, but the bottom line is that if there is no prejudice, we haven't got a problem, and I can't find where I can suggest that the court would have done anything different. He had the chance. He had everything in front of him. He had all the factors in front of him, made the decision he determined to make, and I got no Supreme Court saying that it was against due process to make it. So I'm having trouble with that argument. Well, our main contention is that the judge did not, in fact, have all the information before him that he should have had because of the ineffective assistance of counsel. Such as what? Well, you recall the background of the case, and that is that after the first reversal, the case went back for re-sentencing or for retrial of the charge of a strike under the three strikes law. I sought to be appointed to be his attorney, and the judge, this is one of our contentions on appeal, arbitrarily denied that by just saying, why should I depart from my usual practice of appointing the local private defender, and said that because a another private defender would be. On that point alone, you will acknowledge that Supreme Court precedent says that the court can appoint competent counsel, not necessarily the counsel that the defendant wants to represent him. That's well established, is it not? Yes, I do. The rest of our contention is this was not a fair hearing. We're relying on Supreme Court precedent entitling the defendant to that. But they did have a hearing, correct, as to which counsel should be appointed. There was in front of the judge an ex parte motion. He asked counsel and Gonzalez to state any further reasons that they had as to why they should not do what they had to do. And then after everybody had their chance to do what they had to do, the judge made his decision. I mean, there was a petition in front of him. The arguments were made. He asked anybody else if they had anything else to do. And then he said, hey, I'm not going to go there. I'm going to go with who I generally appoint. Yes. Well, our due process argument is not based on the conduct of the hearing. The judge did give it a fair hearing. But on the arbitrary reason that he gave for denying the motion, without regard to defendant's prior relationship with me, with the preliminary steps that I had taken to prepare for the trial of the prior serious felony conviction and for the resentencing. Would there have been any difference in cost to the State to appoint you as opposed to who was appointed? No, not at all. Because I offered to handle the case for exactly the same financial arrangements that would be made with the private defender. But your main point is, and I think it's a good point, that you suggested to substituted counsel that they pursue the fact, which was not pursued originally, that the man had some mental disabilities, which would have lessened the effect of the conduct or at least the sentence. Is that correct? Well, I'm not sure what's more important, that my suggestion that he meet, as I did with the family members, and get their feeling about whether or not Mr. Gonzalez would be welcomed back within their family group in association with their children and so on, or appointed to be brought up. Is there anything in this record, on appeal to us, that reflects that had substituted counsel pursued that, I mean, there's nothing in the record, either from him or on your appeal here, to indicate that there was any evidence that the man had a mental deficit which would have reasonably could have made a difference, either in his conviction or sentencing? Well, I think it's pretty clear there was. It certainly was enough to warrant evaluation by an expert witness. It's not clear to me that there's anything in the record that does anything that would have made a reasonable probability of a difference, either in the conviction or the sentence. What do you see that I'm missing? Well, maybe we're talking about two different things. One thing is I think there is enough in the record to show that there is reason to doubt that he was entirely mentally competent. What is that in the record that shows that? Just the conduct? Yes. Conduct speaks for itself. It doesn't speak for the fact that he's got a mental deficit. Well, there were his two prior convictions for exposing himself to adult women that raise a doubt, I think, about whether he was functioning well mentally. And then, of course, there were the rather bizarre facts of this case, which he was trying on female clothing and hiding out in various places when children sought him out, and then the bizarre way that he behaved when they did find him. So far as that's concerned, there was enough that I think any reasonably competent attorney would have said this person should be evaluated by a psychologist. That's what I suggested to the lawyer that he do for the sentencing hearing. Is there anything before us that reflects that had a psychiatrist examined him, that there's a reasonable probability that the sentence or the conviction would have been different? Well, the problem there is that the error that we're complaining about is that the appointed attorney did not follow my suggestion, didn't have him evaluated by a psychologist when there was an opportunity to do that, when he was there in the local county jail and there were funds available for that. Because he didn't do that, we don't know what the psychologist's evaluation would have been. Well, either do we. I mean, look, I think your idea is a good one. But on appeal here, we've got to be satisfied in order to reverse this. There's got to be something before us from which we can hang a hat on that says there's a reasonable probability that the sentence or would have been different. And what is there in this record which reflects that? Well, I don't think that the result can be justified by the error itself. The error was the incompetence of counsel in failing to have this evaluation done. And as a result of that error, we don't know what the result of the evaluation would have been. So you're suggesting then, as I understand it, that simply because of his prior conduct, which is in the record, that even though his family did not believe he had any mental problems, that he had a drinking problem, and that this was the result of a drinking problem, the probation report showed no mental problems. In fact, there is no evidence in the record other than his conduct in prior charged conduct, that that's enough, that everybody should have a mental evaluation? That would be enough that a reasonably competent attorney would have sought a mental evaluation. Now, after the attorney failed to obtain one in the trial court at the time of the sentencing, I filed a petition for the habeas corpus in the California Court of Appeal on this ground. But instead of issuing an order of show cause or ordering an evidentiary hearing at which a psychologist could have been appointed and done the evaluation, then you would have before you the record of what that psychologist had to say, whatever it might be. The Court of Appeal summarily denied the habeas petition by a footnote in its opinion. Then when we filed our habeas corpus petition in the district court, we again pointed out to the court the need for an evidentiary hearing so that in preparation for that evidentiary hearing, by means of the discovery processes that are available, we could have that psychological evaluation, we could present to the court the report. We don't know what that would have been, but that all goes back to the very error that we're complaining about, which is the failure of the trial counsel to perform as a reasonably competent attorney by following my suggestion to have the defendant evaluated by a psychologist when there were these clear signs that he was not mentally  Do you want to save some time for rebuttal? I'll do that. Great. Thank you. I'll defer your argument, counsel. We'll hear from the warden at this time. Ms. Critchfield? May it please the Court. My name is Pam Critchfield, and I represent Respondent Warden. We submit that the State Court of Appeal and the California Supreme Court applied U.S. Supreme Court authority in an objectively reasonable manner in this case. And it is, as the Justice, as you have pointed out, a habeas case, and it is a deferential review. I must confess I am absolutely mystified why the judge in this case would not have appointed Mr. Such to continue the representation. It sounds to me like it would have not cost the county, whoever pays for indigent counsel Additional funds. Any additional. It probably would have cost less. He was familiar with the client, had good lines of communication with him, the client trusted him, and with 20-20 hindsight, he had good ideas about how to approach sentencing in an enormously difficult case. So why not appoint him? I don't know the answer to that, but my best guess would be that he felt it was a sentencing hearing. It was relatively straightforward. Well, we do know, because he made a statement on the record, the judge, for why he declined to appoint Mr. Such and made the appointment. He made a statement on the record. Now, you have to stand on that statement, and by standing on it, we have to be satisfied that it satisfies the Sixth Amendment. The statement you're referring to is that he normally appoints the private defender in these situations. Is that correct? Yes. That's the only statement he made as far as I'm aware. And I would Did he make any other statement? Not that I'm aware of. I mean, I think he listened to the arguments, and then probably that was the only statement that was made. But I would like to point out again, as I did on my brief, that there is no U.S. Supreme Court authority that says you have the right to appointed counsel. Your choice of appointed counsel. No, but there is. But the law is that the judge has to make a reasoned decision for his appointing successor counsel. I think there's law to that effect. He has to make a reasoned decision. I think the words are, don't quote me on this, there has to be a reasoned decision or understanding. And the only thing in this record is that he stated that that's his policy, I think, or that he usually does. Is that a good, is that a reason that would pass article, that would pass Sixth Amendment muster? Yes, I believe it would. Suppose he had said, I don't want to appoint Mr. Such, I'm going to follow my normal practice, which is to appoint my cousin. Would that have been proper? Or if he had said, my normal practice is there's a law school down the street, forget that it's not accredited, and that none of its graduates have ever passed the bar, except for this one person who I happen to like a lot. So that's my normal practice, is to appoint people one year out of law school to represent people in sentencing hearings like this. Would that have been reasonable? Is that objectively unreasonable? Yeah. It might be incorrect, but is it objectively unreasonable? Well, can we judge its reasonableness by what happened? Meaning? A sentencing hearing where the appointed counsel couldn't even follow the reasonable suggestions made by Mr. Such in his prior successful appeal? I think the counsel that was appointed chose not, he chose a different strategy. He chose not to follow the suggestions of Mr. Such in this case. And I think the district court pointed that out in its denial of this petition, that it's a basis, it's really a difference of trial strategy. What strategy did he follow? He had no strategy. He argued, he made an argument at sentencing that the behavior was de minimis, that the alcoholism was probably a direct contributor to the conduct, that the defendant or petitioner was 47 or 48 years old, and that he had never been to prison before. Did he put on the record that the family involved would welcome him back? No, and I don't believe that that is necessarily true. I think Mr. Such had a conversation with family members and put in his letter that I don't necessarily think that the mother of those children would want this man around her children any longer. What evidence in the record is there of that? There isn't evidence of that, but there isn't evidence that she would openly welcome him into her home either, after what he had done. But there was no inquiry made by a substituted counsel whether they would or would not welcome him back. He made no, there was nothing in his record indicating any. I believe that he read Mr. Such's letter, and I believe that he had an hour-long conversation with Mr. Such the night before sentencing. But that's not evidence of what the family would have done if there was a proffer for him to come back. No, but I think he had some evidence of what Mr. Such had found out, in other words. I just want to back water to what Judge Hawkins raised with you, and that's that, as I understand the law, and I'm not saying I'm totally correct, that the court has to make a reasoned decision why they appoint successor counsel. Given the fact that you have what would appear to be someone that knows the case, is requested by the defendant, and would not cost any more, how can you say that the judge for Sixth Amendment purposes made a reasoned decision by saying, this is my usual practice, makes any sense? So how do you get around that? And I disagree. I think the usual practice of appointing someone who is regularly in court conducting sentencing hearings is a reasonable approach. Was there any indication that Mr. Such does not regularly, I mean, is there any comparison between Mr. Such's experience as a changing horses in the middle of the stream here, that the new horse knows more about sentencing than the horse that you've been riding? I believe that the private defenders are present, represent defendants at sentencing hearings on a regular basis. Mr. Such as an appellate attorney doesn't appear in the trial court at sentencing hearings on a regular basis. So your theory is that someone appearing regularly would be more able, because they have more experience? It may have been what was partially behind the trial judge's reason in this case. Well, it may have been, but we have to be satisfied. This isn't a death case. Excuse me, can I just finish my question? Your position is that he made a reasoned decision for Sixth Amendment purposes, is that it? Correct. By saying that he may be more experienced because he has a better advocate because he has regular sentencing experience? Correct. How old was the substituted counsel? I don't know. What county was this? San Mateo. They don't have a public defender program. They refer the cases out to private defenders in San Mateo County. Incidentally, at resentencing, the court cited an aggravating factor, evidence of planning. I didn't see any planning in defendant's conduct. What planning was there that he attributed this enhancement to when it went over my head? Can you throw me a lifeline and help me where that's in the record? I think what it referred to was he went up into the, I think he didn't think the children came home from school early on the day of the April 3rd incident. And he was up in the bedroom playing with the underwear. And then they, the children left the room suddenly. He cleaned it all up. He put everything away and then went and got dressed. I think he was also, had no clothes on. Went downstairs into the garage and they ran into the, came into the garage and he was in there hiding in a closet. And I think there was, maybe you can infer from that, that he wanted to encounter them again. And that's how he did it. Well, that might be the facts of what occurred. But is that evidence of planning? Is that evidence of planning? I mean, usually you think of planning as a plan that's laid out or, you know, something that's thought over and executed pursuant to whatever schedule you have and so forth. Is that evidence of planning? I think it could be evidence of a plan to put himself in the way of the perpetrator of, in the middle of what they were doing. I think that's, the planning referred to that versus the previous incidents. Well, if this court, if this court determines that there's no evidence of planning, what you just recounted is the facts of what occurred, but it's not evidence of planning, do we have to send this back for resentencing? Do we have to grant the petition and say that there was a sentence based on planning which is absent from the record? I believe that the trial judge had other reasons as well, Your Honor. Of planning? No, of why he chose the sentence that he did. Why he chose the 16-year sentence. It's in the... Well, I'm talking about the enhancement. He gave an enhancement for planning. He didn't, it's not an enhancement. He cited reasons. Aggravated factor. Right. It's an aggravated factor. He cited reasons why he was choosing the upper term. Call it an enhancement, he called it an aggravating factor. To me, it's a way, you're going to wind up with a more severe sentence, let's put it that way. And I didn't see any planning, certainly it wouldn't be planning under the federal guidelines sentencing. Okay. He also listed defendant's priors convictions. That's not planning. That's not planning. No, I'm not referring to planning. I'm referring to the other reasons that he cited as aggravating factors for choosing the 16-year sentence. Yeah, but one of the aggravating factors was planning. Correct. And my question to you is, he gave him more time because of this aggravating factor. As well as others. As well as others. But if he gave him a more severe sentence by reason of three aggravating factors. Okay. And one of them was improperly denominated an aggravating factor, that sentence can't stand. That's not, no, that's not true. You don't see the law as being if there are. No, I don't. If there are three reasons why you give a sentence and one of them is not in the record that the sentence is. I don't think. You disregard that proposition. No, I don't think that's the law. You disagree with the proposition. Yes. Okay. If there are no further questions, I would submit it on the briefs. I don't see any others. Thank you very much for your argument. Rebuttal, counsel. Well, just one point, which is probably an obvious one, but I don't think I made it, and that is that I don't believe that the appointed attorney could have made a reasonable decision not to call the family members or not to have an evaluation and to call a psychologist without consulting with them, without meeting with the family members, seeing what they would have to say, seeing how persuasively they would say it, see how moving witnesses they might have been at the sentencing hearing by personal contact with them, and couldn't have made a reasonable tactical decision not to call a psychologist to present mitigating evidence without at least having an evaluation to see what the psychologist would say. Counsel, as I read your appeal, I didn't see you challenging the sentence on the way it was done, only that it was longer. Isn't that the challenge? Well, I did raise the points that Judge Callan and the Attorney General were talking about, that the reasons that the judge gave for the aggravated term were weak, the prior convictions, which was not, he had a prior felony conviction, about 20 years old, and these two recent indecent exposure convictions, that's why I say that was a weak reason. Planning was not a true reason at all, because there was no evidence of planning, this never would have happened if it hadn't happened to be the minimum day when the children were released early and came home and found him in this intoxicated state. And then, of course, the other reason that the judge gave, and that was that previously he thought that if I gave him a middle term and doubled it, it would be 24 years and that would be too long, but now that I don't have to double it, 16 years would be just right. Well, that's not an aggravating factor, that's an improper reason for this upper term sentence. Thank you. Thank you very much. Okay. Thank you both for your arguments. The case just argued will be submitted for decision and the Court will stand in recess for the day.
judges: Hawkins, Smith, Cowen